**In the Matter of B.K.C., Appellant–Respondent,**

**v.**

**STATE of Indiana, Appellee–Petitioner.**

No. 49A02–0202–JV–174.

Court of Appeals of Indiana.

Jan. 9, 2003.

Jan B. Berg, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

B.K.C. appeals the trial court's dispositional order finding him to be a delinquent child and ordering wardship of him to the Indiana Department of Correction ("DOC") for a determinate sentence of eighteen months. B.K.C. raises five issues, which we consolidate and restate as:

I. Whether the trial court abused its discretion by admitting hearsay evidence at the dispositional hearing;

II. Whether the evidence is sufficient to support the trial court's adjudication of B.K.C. as a delinquent;

III. Whether a determination that a juvenile delinquent, such as B.K.C., is a sex and violent offender under Ind.Code § 5–2–12–4 is a prerequisite to imposing a determinate wardship under Ind.Code § 31–37–19–9; and

IV. Whether the trial court abused its discretion by ordering wardship of B.K.C. to the DOC for a determinate period of eighteen months because the wardship is punitive and does not further the rehabilitative goals of the juvenile justice system.

We affirm.

The facts most favorable to the dispositional order follow. On November 22, 2001, Procelia Edwards was working at a Dairy Queen restaurant in Indianapolis when B.K.C., who was fourteen years old at the time, Terry Williams, and a third young man, entered the restaurant. Williams placed a food order for himself and B.K.C. B.K.C. gave Williams the money to pay for the order. After Williams paid Edwards for the food order, he brandished what appeared to be a handgun and ordered her to put money in a bag. At the same time, two other customers entered the Dairy Queen, which prompted the three young men to run and hide behind a staircase. This diversion gave Edwards an opportunity to activate the restaurant's alarm system. Williams then began asking Edwards about the surveillance tape and the safe located in the back of the restaurant. Edwards accompanied Williams and B.K.C. to the back of Dairy Queen and informed them that she did not have the combination to the restaurant's safe. B.K.C. told Edwards to open

the back door and he and Williams left the restaurant. Williams left the Dairy Queen with $769.03.

On December 18, 2001, the State filed a delinquency petition alleging that B.K.C. was a delinquent child for committing an act that would be robbery, a class B felony,[1] if committed by an adult and an act that would be carrying a handgun without a license, a class A misdemeanor,[2] if committed by an adult. At the denial hearing, Edwards identified B.K.C. as one of the men appearing in the surveillance tape of the incident. In addition, Detective Kevin Lauerman testified that B.K.C.'s mother had identified B.K.C. in the surveillance tape. Moreover, B.K.C. admitted being in the Dairy Queen with Williams when Williams brandished the weapon. At the conclusion of the denial hearing, the trial court adjudicated B.K.C. to be a delinquent for committing an act that would be robbery, a class B felony, if committed by an adult. The trial court ordered wardship of B.K.C. to the DOC for a determinate period of eighteen months. On February 19, 2002, B.K.C. filed a notice of appeal alleging that the trial court erred when it adjudicated him a delinquent and when it ordered wardship of him to the DOC for a determinate sentence of eighteen months.

Before we address B.K.C.'s claims on appeal, we observe that the choice of a specific disposition for a delinquent child is within the discretion of the trial court, subject to the statutory considerations of the welfare of the child, the safety of the community, and a statutory policy of favoring the least harsh disposition. *A.M.R. v. State*, 741 N.E.2d 727, 729 (Ind.Ct.App.2000). We may overturn the trial court's disposition order only if we find that the trial court has abused its

---

1. Ind.Code § 35–42–5–1 (1998).

2. Ind.Code § 35–47–2–1 (1998).

discretion. *Id.* An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Matter of Adoption of L.C.,* 650 N.E.2d 726, 733 (Ind.Ct.App. 1995), *reh'g denied, trans. denied, cert. denied,* 517 U.S. 1136, 116 S.Ct. 1423, 134 L.Ed.2d 547 (1996). With this law as our guide, we now address B.K.C.'s arguments.

## I.

■ The first issue is whether the trial court abused its discretion by admitting hearsay evidence at the dispositional hearing. B.K.C. argues that the trial court abused its discretion by permitting the investigating police officer, Detective Lauerman, to testify regarding a statement made to him by B.K.C.'s mother, wherein she identified B.K.C. as one of the individuals in the surveillance video. The admission or exclusion of evidence is a matter left to the sound discretion of the trial court, and a reviewing court will reverse only upon an abuse of that discretion. *Johnson v. State,* 671 N.E.2d 1203, 1205 (Ind.Ct.App.1996), *trans. denied.* When reviewing a trial court's decision under an abuse of discretion standard, we will affirm if there is any evidence supporting the trial court's decision. *Sparkman v. State,* 722 N.E.2d 1259, 1262 (Ind.Ct.App. 2000). Moreover, a claim of error in the admission of evidence will not prevail on appeal "unless a substantial right of the party is affected." *Id.* (citing *Kellett v. State,* 716 N.E.2d 975, 978 (Ind.Ct.App. 1999)). In determining whether error in the introduction of evidence affected an appellant's substantial rights, we assess the probable impact of the evidence on the jury or fact finder. *McClain v. State,* 675 N.E.2d 329, 331 (Ind.1996). However, the admission of hearsay is not grounds for

reversal where it is merely cumulative of other evidence admitted. *Id.* at 331–32.

Here, B.K.C. contends that Detective Lauerman's testimony regarding B.K.C.'s mother's identification constituted hearsay. As such, B.K.C. argues, the trial court abused its discretion by permitting Detective Lauerman to give hearsay testimony over a timely objection. B.K.C. further argues that the trial court's error prejudiced him

> because neither the victims of the robbery nor the other persons present could identify B.K.C. as one of the perpetrators. Had the trial court correctly excluded the hearsay statement of B.K.C.'s mother identifying B.K.C. as one of the persons appearing in the robbery photos, there would have been no evidence linking B.K.C. to the robbery.

Appellant's Amended Brief at 9. We disagree.

■ Even assuming that the trial court erroneously allowed Detective Lauerman to testify that B.K.C.'s mother identified B.K.C. in the surveillance video, we are still unable to reverse the delinquency adjudication because any resultant error was harmless. Our review of the Record reveals that Detective Lauerman's testimony regarding B.K.C.'s mother's identification was merely cumulative of other evidence that placed B.K.C. at the Dairy Queen restaurant on the night it was robbed. First, Edwards repeatedly testified that B.K.C. was present at the Dairy Queen on the night of the robbery. She identified B.K.C. as being in the courtroom and as being the person on the surveillance tape and testified that he entered the restaurant with Williams and another male, hid behind a staircase when other customers entered the restaurant, and left through the back door with Williams after the robbery. Moreover, B.K.C., himself, testified that he was at the Dairy Queen on the

evening of the robbery because he wanted to get something to eat. Because Detective Lauerman's testimony regarding B.K.C.'s mother's identification of B.K.C. in the surveillance tape merely established that B.K.C. was present at the Dairy Queen restaurant on the night of the robbery, it was cumulative. As such, any error in its admission is harmless. *See, e.g., Sparkman,* 722 N.E.2d at 1264.

## II.

■ The second issue is whether the evidence is sufficient to support the trial court's adjudication of B.K.C. as a delinquent. When we review sufficiency of the evidence claims with respect to juvenile adjudications, we neither reweigh the evidence nor judge the credibility of the witnesses. *Fields v. State,* 679 N.E.2d 898, 900 (Ind.1997). Rather, we consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Blanche v. State,* 690 N.E.2d 709, 712 (Ind.1998).

B.K.C. first argues that the evidence is insufficient to support the trial court's finding that he committed robbery, a class B felony, if committed by an adult because the State failed to prove an essential element of the offense of robbery: that he was armed with a handgun. Second, B.K.C. contends that the evidence is insufficient to prove that he was an accomplice to the crime of robbery. We address each of B.K.C.'s claims separately.

## A.

■ First, B.K.C. contends that the evidence is insufficient to support his delinquency adjudication because the State failed to prove every essential element of the crime of robbery. The Due Process Clause of the United States Constitution protects an accused against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *J.T. v. State,* 718 N.E.2d 1119, 1122 (Ind.Ct.App. 1999) (quoting *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970)). This protection applies to juveniles as well as adults. *J.T.,* 718 N.E.2d at 1122. Thus, when the State seeks to have a juvenile adjudicated to be delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of that crime beyond a reasonable doubt. *Id.*

Here, the State charged B.K.C. with robbery, a class B felony, if committed by an adult pursuant to Ind.Code § 35–42–5–1. As charged, the State was required to prove that: (1) B.K.C. did knowingly or intentionally take money from Edwards; (2) by putting Edwards in fear; (3) while armed with a deadly weapon, i.e., a handgun.[3] B.K.C. maintains that there is a "material variance between the offense as charged and the evidence presented." Appellant's Amended Brief at 11. Specifically, B.K.C. argues that because the State specified in the charging information that B.K.C. took money from Edwards while armed with a handgun, as opposed to a deadly weapon, it was required to prove that he was armed with a handgun during

---

**3.** Ind.Code § 35–42–5–1 provides in pertinent part:

A person who knowingly or intentionally takes property from another person or from the presence of another:

(1) by using or threatening the use of force on any person; or

(2) by putting any person in fear;

commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant.

the commission of the robbery. However, B.K.C.'s argument continues, the evidence presented at the dispositional hearing demonstrated that the gun used in the commission of the robbery was a BB gun, which is materially different than a handgun. As such, there is a material variance between the offense of robbery as charged and the evidence presented at the dispositional hearing.

 We agree with B.K.C. that if the evidence presented at the dispositional hearing conclusively showed that the gun used in the commission of the robbery was a BB gun, there is a significant variance between the charging information and the proof at trial. *See, e.g., Miller v. State,* 616 N.E.2d 750, 755 (Ind.Ct.App.1993) (finding a material variance between the charging information and evidence presented at trial where the charging information specified use of a handgun and the proof at trial revealed that the weapon used was a pellet gun). However, it was never proven at the dispositional hearing that the gun brandished by Williams was a BB gun. Rather, the evidence regarding the type of gun used was in dispute. Edwards testified that the weapon she saw looked "kind of, sort a" like a real gun. Transcript at 20. Detective Lauerman testified that he never recovered the actual weapon used by Williams in the robbery of the Dairy Queen restaurant. In fact, B.K.C. is the only witness who testified that the weapon brandished by Williams was a BB gun. B.K.C.'s assertion on appeal that the weapon used in the commission of the robbery was a BB gun and not a handgun is merely an invitation for us to reweigh the evidence and reassess the credibility of the witnesses, which we will not do. Rather, the evidence presented at the dispositional hearing is sufficient to sustain the trial court's adjudication of B.K.C. as a delinquent for committing robbery as a class B felony if committed by an adult. *See, e.g., In re J.L.T.,* 712 N.E.2d 7,

11 (Ind.Ct.App.1999) (holding that the evidence was sufficient to sustain the trial court's delinquency judgment), *reh'g denied, trans. denied.*

### B.

Next, B.K.C. argues that the evidence is insufficient to support the delinquency adjudication because the "evidence does not establish beyond a reasonable doubt that B.K.C. was an accomplice in the robbery." Transcript at 13. Specifically, B.K.C. asserts that the evidence presented at the delinquency hearing failed to establish any overt action on his part that demonstrated his knowing and willing participation in the robbery.

 In the present case, the State charged B.K.C. with robbery, a class B felony, if committed by an adult on the theory that B.K.C. was criminally liable as an accomplice because, even if he did not actually commit the robbery, he was acting in concert with Williams. Under the accomplice liability statute, a person "who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense." Ind.Code § 35–41–2–4 (1998). To find B.K.C. guilty of robbery if committed by an adult under an accomplice liability theory, the trial court must have found that B.K.C. knowingly and intentionally aided, induced, or caused Williams to commit robbery. *See, e.g., Small v. State,* 531 N.E.2d 498, 499 (Ind.1988). Factors considered by the fact-finder to determine whether a defendant aided another in the commission of a crime include: (1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime. *Edgecomb v. State,* 673 N.E.2d 1185, 1193 (Ind.1996), *reh'g denied.* While the defendant's pres-

ence during the commission of the crime or his failure to oppose the crime are, by themselves, insufficient to establish accomplice liability, the trier of fact may consider them along with the factors above to determine participation. *Echols v. State,* 722 N.E.2d 805, 807 (Ind.2000). Furthermore, accomplice liability applies to the contemplated offense and all acts that are a probable and natural consequence of the concerted action. *Wieland v. State,* 736 N.E.2d 1198, 1202 (Ind.2000).

■ B.K.C. argues that there is no evidence, other than his presence at the Dairy Queen on the night in question, that he actively participated in the robbery and that Williams was acting on his own behalf in carrying out the robbery. We disagree. Applying our standard of review, considering only the probative evidence that supports the judgment, we find that the evidence is sufficient to support the trial court's adjudication of B.K.C. as a delinquent pursuant to an accomplice theory of liability. As William's companion, B.K.C. accompanied Williams into the Dairy Queen restaurant. Williams placed an order with Edwards for himself and B.K.C., and B.K.C. gave Williams the money to pay for the food order. After Williams brandished his weapon and it became apparent that Williams intended to rob the Dairy Queen, B.K.C. did nothing to oppose the commission of the robbery. Rather, he ran and hid with Williams behind a staircase as other customers, who were unaware of the robbery, entered the restaurant. In addition, B.K.C. demanded that Edwards open the back door and, when she obeyed, he left with Williams after the robbery had taken place. From this evidence, a reasonable trier of fact could have determined beyond a reasonable doubt that B.K.C. was Williams's accomplice during the commission of the robbery. *See, e.g., Wieland,* 736 N.E.2d at 1203. Consequently, we find that there is sufficient evidence to support B.K.C.'s de-

linquency adjudication for committing an act that would be robbery, a class B felony, if committed by an adult. *See, e.g., J.L.T.,* 712 N.E.2d at 11.

## III.

The third issue is whether a determination that a juvenile delinquent, such as B.K.C., is a sex and violent offender under Ind.Code § 5–2–12–4 is a prerequisite to imposing a determinate wardship under Ind.Code § 31–37–19–9. The trial court's dispositional order provides, in relevant part, that:

> The [trial court] as part of its disposition, orders [p]ursuant to IC 31–37–19–9, finds that [B.K.C.] was at least 13 years of age and less than 16 years of age and committed an act that, if committed by an adult would be: Robbery (IC 35–42–5–1),
>
> The [trial court] Orders:
>
> [B.K.C.] be committed to [the DOC] for a determinant [sic] sentence of 18 months....

Appellant's Appendix at 8.

B.K.C. first contends that the trial court's imposition of a determinate sentence was erroneous because the trial court failed to make the requisite determination under Ind.Code § 5–2–12–4 (1998) as required by Ind.Code § 31–37–19–9 (2001 Supp.). Specifically, B.K.C. argues that his determinate wardship was erroneous because "a prerequisite to determining if a juvenile offender qualifies for a [determinate] sentence is a determination by the judge under Indiana Code section 5–2–12–4," which was never done. Appellant's Amended Brief at 17. The State agrees that the determinate wardship of B.K.C. to the DOC was erroneous because the trial court did not make a determination under Ind.Code § 5–2–12–4 as required by Ind. Code § 31–37–19–9, and urges remand to

allow the trial court to make such a determination.

However, B.K.C. further argues that because the offense committed by B.K.C., robbery, does not fit within the parameters of the sexually-related offenses delineated in Ind. § 5–2–12–4, the trial court could not make the determination required to support a determinate wardship. The State argues that the offense committed does not have to be one listed in Ind.Code § 5–2–12–4.

Ind.Code § 31–37–19–9 provides as follows:

(a) This section applies if a child is a delinquent child under IC 31–37–1.

(b) After a juvenile court makes a determination under IC 5–2–12–4, the juvenile court may, in addition to an order under section 6 of this chapter, and if the child:

(1) is at least thirteen (13) years of age and less than sixteen (16) years of age; and

(2) committed an act that, if committed by an adult, would be:

(A) murder (IC 35–42–1–1);

(B) kidnapping (IC 35–42–3–2);

(C) rape (IC 35–42–4–1);

(D) criminal deviate conduct (IC 35–42–4–2); or

(E) robbery (IC 35–42–5–1) if the robbery was committed while armed with a deadly weapon or if the robbery resulted in bodily injury or serious bodily injury;

order wardship of the child to the department of correction for a fixed period that is not longer than the date the child becomes eighteen (18) years of age, subject to IC 11–10–2–10.

Ind.Code § 5–2–12–4 defines offender as follows:

(a) As used in this chapter, "sex and violent offender" means a person con-

victed of any of the following sex and violent offenses:

(1) Rape (IC 35–42–4–1).

(2) Criminal deviate conduct (IC 35–42–4–2).

(3) Child molesting (IC 35–42–4–3).

(4) Child exploitation (IC 35–42–4–4(b)).

(5) Vicarious sexual gratification (IC 35–42–4–5).

(6) Child solicitation (IC 35–42–4–6).

(7) Child seduction (IC 35–42–4–7).

(8) Sexual misconduct with a minor as a Class A, Class B, or Class C felony (IC 35–42–4–9).

(9) Incest (IC 35–46–1–3).

(10) Sexual battery (IC 35–42–4–8).

(11) Kidnapping (IC 35–42–3–2), if the victim is less than eighteen (18) years of age.

(12) Criminal confinement (IC 35–42–3–3), if the victim is less than eighteen (18) years of age.

(13) An attempt or conspiracy to commit a crime listed in subdivisions (1) through (12).

(14) A crime under the laws of another jurisdiction, including a military court, that is substantially equivalent to any of the offenses listed in subdivisions (1) through (13).

(b) The term includes a delinquent act by a child who:

(1) is at least fourteen (14) years of age;

(2) is on probation, is on parole, or is discharged from a facility by the department of correction, is discharged from a secure private facility (as defined in IC 31–9–2–115), or is discharged from a juvenile detention facility as a result of an adjudication as a delinquent

child for an act that would be an offense described in subsection (a) if committed by an adult; and

(3) is found by a court by clear and convincing evidence to be likely to repeat an act that would be an offense described in subsection (a) if committed by an adult.

■ After carefully reviewing both statutes, we conclude that a determination under Ind.Code § 5–2–12–4 is not required before a juvenile court may order wardship of a delinquent child to the DOC for a determinate period, if the child meets the criteria set out in Ind.Code §§ 31–37–19–9(b)(1)–(2). In reaching this conclusion, we construe Ind.Code § 31–37–19–9 in such a way as to ignore the words: "After a juvenile court makes a determination under IC 5–2–12–4." We do so to give effect to the apparent intent of the legislature and to avoid a construction that would be an absurdity. Our reasoning follows.

The parties have not cited, and our research does not reveal, any cases concerning the meaning of Ind.Code § 31–37–19–9. Thus, we are presented with an issue of first impression. The facts relevant to the resolution of this appeal are not in dispute. Although the trial court did not explicitly construe Ind.Code § 31–37–19–9 to ignore the phrase "After a juvenile court makes a determination under IC 5–2–12–4," its action in imposing a determinate sentence upon finding that B.K.C. was at least thirteen years of age and less than sixteen years of age and had committed an act that, if committed by an adult, would be robbery was clearly based only on the criteria in Ind.Code § 31–37–19–9 and implicitly concluded that no determination under Ind.Code § 5–2–12–4 was necessary. And so, we turn to the task of interpreting Ind.Code § 31–37–19–9.

■ The interpretation of a statute is purely a question of law. *Robinson v. Monroe County*, 658 N.E.2d 647, 649 (Ind. Ct.App.1995), *reh'g denied, trans. denied.* Our single purpose in applying a statute is to ascertain and give effect to the intent of the legislature. *Id.* We begin with the text of the statute. If that is clear and unambiguous, our task is merely to apply the plain meaning of the statute. *Public Employees' Retirement Fund v. Shepherd*, 733 N.E.2d 987, 990 (Ind.Ct.App.2000), *trans. denied.* If, however, the text is unclear and subject to more than one reasonable interpretation, we deem it ambiguous. However, we still have the obligation to interpret the ambiguous text in such a way as to give effect to the legislative intent as we discern it using established principles of statutory construction. *Ballard v. State*, 715 N.E.2d 1276, 1279 (Ind.Ct.App. 1999).

■ A fundamental principle of construction is to construe the statute in accordance with the purpose of the statute and the statutory scheme of which it is a part. For example, when interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. *Chavis v. Patton*, 683 N.E.2d 253, 257 (Ind.Ct.App.1997). We presume that the legislature intends for us to apply language in a logical manner consistent with the statute's underlying policy and goals. *Id.* The legislative intent as ascertained from the whole prevails over the strict, literal meaning of any word or term used therein. *Id.* Lastly, we conventionally construe penal statutes strictly against the State, but they are not to be read so narrowly that they exclude cases they fairly cover. *Sales v. State*, 723 N.E.2d 416, 420 (Ind.2000). However, the law is clear that:

The rule of strict construction of criminal statutes cannot provide a substitute

for common sense, precedent, and legislative history. The construction of a penal statute should not be unduly technical, arbitrary, severe, artificial or narrow. In this regard, while penal statutes are to be strictly construed, they need not be given unnecessarily narrow meaning in disregard of the obvious legislative purpose and intent.... In short, although criminal statutes are to be strictly construed in favor of the defendant, the courts are not authorized to interpret them so as to emasculate the statutes.

73 Am.Jur.2d *Statutes* § 196 (2001) (footnotes omitted).

In the present case, B.K.C. contends that his offense of robbery, a class B felony, if committed by an adult is not within the purview of Ind.Code § 5–2–12–4. Accordingly, his argument continues, the trial court cannot make the requisite determination that he is an offender pursuant to Ind.Code § 5–2–12–4, as mandated by Ind. Code § 31–37–19–9 and, thus, the trial court erred by ordering wardship of him to the DOC for a determinate period of eighteen months pursuant to Ind.Code § 31–37–19–9. B.K.C.'s argument necessarily implies that the determination that a juvenile delinquent is a sex and violent offender under Ind.Code § 5–2–12–4 is a precondition to imposing a determinate wardship under Ind.Code § 31–37–19–9. We now examine the pertinent statutes.

Ind.Code § 5–2–12–4 is part of the statutory scheme that requires registration of "sex and violent offenders" and specifically defines those persons who must register. The qualifying offenses include ten with sexual elements (i.e., Ind.Code §§ 5–2–12–4(a)(1) (10)) and two, kidnapping and crim-

inal confinement, where the victim is less than eighteen years of age (i.e., Ind.Code §§ 5–2–12–4(a)(11)–(12)). The list is completed by inclusion of an attempt or conspiracy to commit any of the twelve listed offenses and a crime under the law of any other jurisdiction that is substantially equivalent to those specifically listed. *See* Ind.Code §§ 5–2–12–4(a)(13)–(14).

Ind.Code § 5–2–12–4 also includes among those who must register as a sex and violent offender a delinquent child who:

(1) is at least fourteen (14) years of age;

(2) is on probation, is on parole, or is discharged from a facility by the department of correction, is discharged from a secure private facility (as defined in IC 31–9–2–115), or is discharged from a juvenile detention facility as a result of an adjudication as a delinquent child for an act that would be an offense described in subsection (a) if committed by an adult; and

(3) is found by a court by clear and convincing evidence to be likely to repeat an act that would be an offense described in subsection (a) if committed by an adult.[4]

■ With respect to a child sex and violent offender, it is clear that the finding by a trial court that the child is likely to repeat an act that would be an offense described in Ind.Code § 5–2–12–4(a) is to be made when the child

is on probation ... [or] on parole, or is discharged from a facility by the department of correction, is discharged from a secure private facility (as defined in IC 31–9–2–115), or is discharged from a

---

4. Ind.Code § 5–2–12–4 shifts from defining a "sex and violent offender" as a *"person* convicted of one of the following,"* in section (a) to "the term includes a delinquent *act* by a child" in section (b). Ind.Code § 5–2–12–4.

This shift is initially somewhat confusing, but the intent is clear to define "sex and violent offender" (i.e., those who must register per Ind.Code § 15–2–12–5) by the crimes or delinquent acts committed.

juvenile detention facility as a result of an adjudication as a delinquent child for an act that would be an offense described in subsection (a) if committed by an adult.

I.C. § 5–2–12–4(b)(2). As we have held, a determination that a child offender should register as a sex and violent offender cannot be made as a part of the initial disposition following a true finding. *See, e.g., In re G.B.,* 709 N.E.2d 352, 353 (Ind.Ct.App. 1999). It may not be a part of the decree of disposition.

On the other hand, Ind.Code § 31–37–19–9 is part of the statutory scheme for disposition of children who have been determined to be delinquent. It provides particularly for children who have committed "an act that would be an offense if committed by an adult." *See* Ind.Code § 31–37–1–2. Ignoring for the moment the introductory language "After a juvenile court makes a determination under IC 5–2–12–4," Ind.Code § 31–37–19–9(b) provides that the juvenile court may order wardship of the child to the DOC for a fixed period if the child:

(1) is at least thirteen (13) years of age and less than sixteen (16) years of age; and

(2) committed an act that, if committed by an adult, would be:

(A) murder (IC 35–42–1–1);

(B) kidnapping (IC 35–42–3–2);

(C) rape (IC 35–42–4–1);

(D) criminal deviate conduct (IC 35–42–4–2); or

(E) robbery (IC 35–42–5–1) if the robbery was committed while armed with a deadly weapon or if the robbery resulted in bodily injury or serious bodily injury.

Plainly, the legislative intent behind Ind. Code § 31–37–19–9 is to give the juvenile court the discretion to impose a determinate wardship under the DOC where the delinquent act would be murder, kidnapping, rape, criminal deviate conduct, or robbery. In this case, B.K.C.'s delinquent act would be robbery had it been committed by an adult and a determinate wardship would be a permitted disposition.

Thus, we come to the question of whether the introductory language of Ind.Code § 31–37–19–9(b), "After a juvenile court makes a determination under IC 5–2–12–4," requires that the juvenile court make a determination under Ind.Code § 5–2–12–4 before it can order a determinate wardship to the DOC. From the text alone, the answer would appear to be "yes," but careful consideration leads us to a "no."

First, there is the problem posed by the text of Ind.Code § 5–2–12–4 and our decision that a determination that a child must register as a sex and violent offender may not be made as part of an initial disposition but must wait until the child has been discharged from the DOC. *See, e.g., In re G.B.,* 709 N.E.2d at 353. This problem would lead us in the direction of concluding that only children who had committed one of the offenses listed in Ind.Code § 31–37–19–9 *and* who had been previously required to register under Ind.Code § 5–2–12–4 could be subject to determinate wardships. Put another way, the delinquent robber or murderer who had previously been required to register as a sex and violent offender could receive a determinate wardship, while the "mere" robber or murderer could not. This interpretation flies in the face of the otherwise clear intent of the legislature to allow the juvenile court the discretion to order determinate wardships for delinquent children who commit offenses specified in Ind.Code § 31–37–19–9.

Second, there is the problem posed by the text of Ind.Code § 31–37–19–9, which provides for determinate wardship in the case of murder, kidnapping, rape, criminal

deviate conduct, and robbery. However, the offenses of murder, kidnapping, and robbery are not included in the offenses listed in Ind.Code § 5–2–12–4. Ind.Code § 5–2–12–4 requires that a person register as a sex and violent offender if he or she has committed a certain offense and the juvenile court determines that he or she is likely to again commit such an offense. Ind.Code § 31–37–19–9 provides for a determinate wardship if certain offenses have been committed. Each statutory list contains offenses not listed in the other. Only two offenses are listed on both: criminal deviate conduct and kidnapping, except that kidnapping is on the list delineated in Ind.Code § 5–2–12–4 only if the victim is under eighteen.[5]

Third, there is the problem posed by the conflict arising from the provision of Ind. Code § 31–37–19–9 that the child must be at least thirteen, but less than sixteen, years of age to be eligible for a determinate wardship and the provision of Ind. Code § 5–2–12–4 that the child must be at least fourteen years of age to be required to register.

So, we come to the point in our analysis where we conclude that only by ignoring the phrase "After a juvenile court makes a determination under IC 5–2–12–4" in Ind.Code § 31–37–19–9 can we give effect to the otherwise clearly expressed intent of the legislature to require certain juvenile offenders to register as sex and violent offenders and to allow juvenile courts the discretion to impose determinate wardships on juvenile offenders who commit certain acts. *See, e.g., State v. Doody,* 556 N.E.2d 1357 n. 6 (Ind.Ct.App.1990) (refusing to construe a statute as literally written because to do so would obtain an unreasonable result), *reh'g denied, trans. denied.* In so doing, we avoid absurd results and revision of statutes to cobble

together something we think might work. If we have gotten it wrong, the legislature will act to correct the matter.

### IV.

The last issue is whether the trial court abused its discretion by ordering wardship of B.K.C. to the DOC for a determinate period of eighteen months because the wardship is punitive and does not further the rehabilitative goals of the juvenile justice system. B.K.C. argues that his eighteen-month determinate sentence is punitive and does not further the rehabilitative goals of the juvenile justice system. Specifically, B.K.C. maintains that his "sentence was an abuse of discretion because the [trial court] had numerous placement alternatives less restrictive than an eighteen-month commitment to a juvenile prison." Appellant's Amended Brief at 21 (emphasis omitted).

As previously mentioned, the choice of a specific disposition of a juvenile adjudicated a delinquent child is within the sound discretion of the trial court, subject to the statutory considerations of the welfare of the child, the community's safety, and the Ind. Code's policy of favoring the least harsh disposition. *A.M.R.,* 741 N.E.2d at 729. We will not reverse a juvenile disposition absent a showing of an abuse of discretion. *E.H. v. State,* 764 N.E.2d 681, 684–685 (Ind.Ct.App.2002), *reh'g denied, trans. denied.* An abuse of discretion occurs when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

Our supreme court has explained the nature of the juvenile justice system as follows:

---

**5.** The State's argument that the determination under Ind.Code § 5–2–12–4 is not limited to

the offenses listed in (a) simply has no support in the text of the statute.

The nature of the juvenile process is rehabilitation and aid to the juvenile to direct his behavior so that he will not later become a criminal. For this reason the statutory scheme of dealing with minors is vastly different than that directed to an adult who commits a crime. Juvenile judges have a variety of placement choices for juveniles who have delinquency problems, ranging from a private home in the community, a licensed foster home, a local juvenile detention center, to State institutions such as the Indiana Boys School and Indiana Girls School. None of these commitments are considered sentences. A child can become a juvenile delinquent by committing acts that would not be a violation of the law if committed by an adult, such as incorrigibility, refusal to attend public school, and running away from home. A child can also become a delinquent by committing acts that would be a crime if committed by an adult. In the juvenile area, no distinction is made between these two categories. When a juvenile is found to be delinquent, a program is attempted to deter him from going further in that direction in the hope that he can straighten out his life before the stigma of criminal conviction and the resultant detriment to society is realized. In contrast, when an adult is convicted of a crime, the conviction is a stigma that follows him through life, creating many roadblocks to rehabilitation. In addition to the general stigma of being an "ex-con," or a felon, the conviction subjects him to being found a habitual criminal if he later commits additional felonies, and affects his credibility as a witness in future trials. The Legislature purposely designed the procedures of juvenile determinations so that these problems are not visited on those found to be juvenile delinquents in a juvenile court.

*Jordan v. State*, 512 N.E.2d 407, 408–09 (Ind.1987), *reh'g denied*, 516 N.E.2d 1054 (1987).

Moreover, Ind.Code § 31–37–18–6 enumerates a list of factors that the trial court must consider when entering a dispositional decree. The statute specifically provides that:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> (A) in the least restrictive (most family like) and most appropriate setting available; and
>
> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

*Id.*

■ Turning to the facts of this case, we hold that B.K.C.'s eighteen-month determinate sentence is not punitive in nature and does further the rehabilitative goals of the juvenile justice system. B.K.C. committed a serious offense, robbery as a class B felony if committed by an adult, and the trial court had a responsibility to act. The trial court determined that B.K.C. "is in need of care, treatment, rehabilitation or placement." Appellant's Appendix at 8. Accordingly, the trial court ordered wardship of B.K.C. to the DOC for a determinate sentence of eighteen months. The trial court's disposition is clearly authorized by statute for the crime that B.K.C.

committed. Moreover, a short term of confinement can serve many functions, not all of them being punitive in nature. *Madaras v. State,* 425 N.E.2d 670, 672 (Ind. Ct.App.1981). In some instances, confinement may be one of the most effective rehabilitative techniques available. *Id.* "A delinquent child's first exposure to the consequences he will face should he continue to break the law may indeed be the best treatment available in helping a young person readjust his values and priorities in life." *Id.* Accordingly, we conclude that the trial court acted within the law and the bounds of its discretion when it determined that an eighteen-month period of commitment was the best and least restrictive alternative for B.K.C. under the circumstances. *See, e.g., id.*

For the foregoing reasons, we affirm the trial court's adjudication of B.K.C. as a delinquent and his determinate sentence.

Affirmed.

FRIEDLANDER and NAJAM, JJ., concur.