**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 21 2012, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICK T. MCFADDEN**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| T.C., Jr., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A04-1112-JV-679 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry Shewmaker, Judge
The Honorable Deborah Domine, Magistrate
Cause No. 20C01-1108-JD-361

**September 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

T.C., Jr. (T.C.) appeals his adjudication as a delinquent child for committing acts that would constitute Child Molesting,[1] a class C felony, if committed by an adult. T.C. presents a single issue[2] for review: was there sufficient evidence to support the true finding of child molesting?

We affirm.

The facts favorable to the true finding are that in late January or early February 2011,[3] nine-year-old M.B. stayed overnight at the home of her Aunt Tabatha. T.C., Tabatha's nephew and M.B.'s cousin, also stayed overnight at Tabatha's that evening. T.C. was fourteen years old at the time. At some point, M.B. and T.C. went upstairs with Tabatha's son and their cousin, D.H., to play video games, watch television, and use a computer. Sometime after Tabatha had retired for the evening at 10 p.m., M.B. and T.C. were watching a movie on a futon in D.H.'s room. M.B. fell asleep. She awakened sometime in the middle of the night when she felt a pinching feeling on her buttocks. At the time, she was wearing a nightgown, pajama pants underneath it, and underwear. T.C. had his hand "[d]own [her] pants by [her] butt." *Transcript* at 32. His hand was touching her bare skin "[b]y the crack." *Id*. She looked at T.C., who was awake and staring at her. M.B. quickly got up, grabbed her telephone, and walked into the bathroom. T.C. asked where she was going, but she refused

---

[1] Ind. Code Ann. § 35-42-4-3(b) (West, Westlaw current with all 2012 legislation).

[2] Indiana Appellate Rule 46(A)(4) states, "The appellant's brief shall contain the following sections under separate headings …: *Statement of Issues*. This statement shall concisely and particularly describe each issue presented for review." Although the table of contents of T.C.'s brief indicates the statement of issues in his brief may be found on page 3, the statement of issues cannot be found there – or anywhere else in his appellate brief. We were able to discern from context the precise nature of T.C.'s challenge, but such will not always be the case. We encourage counsel to adhere to this requirement in future appellate endeavors.

[3] In his appellate brief, T.C. indicates that the date was February 11, 2011. In its brief, the State indicates that it occurred in "late-January 2011." *Appellee's Brief* at 3. The formal petition of delinquency alleged that

2

to respond. M.B. called her mother, who in turn telephoned Tabatha. Tabatha found M.B. in the dining room talking with her mother on the telephone.

Ultimately, the matter was reported to the authorities and an investigation ensued. During his interview, T.C. denied touching M.B., staring at her, asking where she was going, or indeed even knowing about the allegation until the next morning. On August 23, 2011, the State filed a formal delinquency petition alleging that T.C. had committed an act that would constitute the crime of child molesting as a class C felony if committed by an adult. Following a fact-finding hearing, the court entered a true finding and T.C. was adjudicated to be a juvenile delinquent. At the ensuing dispositional hearing, the court placed T.C. on supervised probation and ordered him to undergo sexual offender treatment.

T.C. contends there was insufficient evidence to support the true finding of child molesting. As with criminal offenses in adult criminal cases, a true finding that a child committed a delinquent act must be based upon proof beyond a reasonable doubt. Ind. Code Ann. § 31–37–14–1 (West, Westlaw current with all 2012 legislation). We review sufficiency claims in this context utilizing the same standard employed in challenges to the sufficiency of evidence supporting adult criminal convictions. *See B.K.C. v. State,* 781 N.E.2d 1157 (Ind. Ct. App. 2003). Pursuant to that standard:

> [w]hen reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Henley v. State,* 881 N.E.2d 639, 652 (Ind. 2008). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the

---

it occurred "on or about the 29th day of January, 2010." *Appellant's Amended Appendix* at 9. For our purposes, late January or early February 2011 is close enough.

3

defendant was guilty beyond a reasonable doubt. *Id.*

*Bailey v. State,* 907 N.E.2d 1003, 1005 (Ind. 2009).

M.B.'s testimony was crucial to the State's case. T.C. offers two arguments in challenging the court's true finding, one of which essentially requests this court to regard M.B.'s testimony as incredible. The other argument challenges the adequacy of the proof of the element that T.C. acted with the intent to arouse or satisfy his own or M.B.'s sexual desires. *See* I.C. § 35-42-4-3-(b). As reflected above, when reviewing challenges of this nature we are disinclined to engage in credibility assessments. T.C. does not provide a compelling reason to depart from this practice.

Essentially, T.C. contends that the testimony of M.B.'s father (Father) casts enough doubt upon M.B.'s claims so as to render her testimony about what happened legally incredible. Father, who was not married to M.B.'s mother, occasionally exercised visitation with M.B. He claimed that he was not aware something had happened between T.C. and M.B. until several weeks after the incident, when M.B.'s mother texted him about it. Upon receiving that text, Father asked M.B. what had happened. According to him, M.B. told him "that she had fell asleep and when she woke up, [T.C.] was touching her boobs." *Id.* at 34. Father further claimed that M.B. never told him that T.C. touched her buttocks. Father testified about this at the fact-finding hearing. The court also heard at the hearing that Father and T.C.'s father had been friends since they were twelve years old and were even brothers-in-law for ten years when Father was married to the sister of T.C.'s father.

There is nothing inherently unbelievable about M.B.'s story. Nothing in the record suggests that M.B. had an animus toward T.C., or that she was coached by someone who did.

4

On the other hand, there is evidence that Father was a long-time friend of the accused's father, which might suggest a motivation to testify as he did. In any event, from our remote perspective, we cannot pass judgment upon the credibility of one versus the other. That task properly fell to the juvenile court, which was able to observe the parties as they testified. Absent any legal justification for departing from our standard practice, we defer to its conclusions in that regard.

We turn now to T.C.'s second argument, which addresses the element of intent. Pursuant to I.C. § 35–42–4–3(b), "[a] person who, with a child under fourteen (14) years of age, performs … any fondling or touching, of either the child or the older person, with intent to … satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony." T.C. contends that even assuming M.B.'s account of the events of that night are correct, i.e., that he put his hands under her clothes and touched her near her anus, "[t]here was no testimony he was touching himself while he put his hand underneath M.B.'s clothing, or that he was sweating or any other indication that he was gratifying or attempting to gratify himself or M.B." *Appellant's Brief* at 8. In other words, according to T.C., there was no evidence of the relevant intent to arouse or gratify his sexual desires.

"'The intent to arouse or satisfy the sexual desires of the child or the older person may be established by circumstantial evidence and may be inferred 'from the actor's conduct and the natural and usual sequence to which such conduct usually points.'" *Kanady v. State*, 810 N.E.2d 1068, 1069-70 (Ind. Ct. App. 2004) (quoting *Nuerge v. State,* 677 N.E.2d 1043, 1048 (Ind. Ct. App. 1997), *trans. denied*). In *Pedrick v. State,* 593 N.E.2d 1213, 1220 (Ind. Ct.

App. 1992), we affirmed the defendant's convictions of child molesting where the defendant "put his arm around the shoulder of [a victim] and let his hand hang, touching her breast. He also placed his hand on the shoulder of [a second victim] and then on her breast." We noted that "[w]hile the evidence of [the defendant's] sexual intent in touching [the victims] [wa]s not overwhelming, it [wa]s sufficient to sustain those convictions...." *Id.*

The evidence of intent in the present case is considerably more compelling than it was in *Pedrick*. One could reasonably make the argument, as *Pedrick* did, that contact with a breast by a hand draped over a shoulder might be inadvertent, and thus the intent misinterpreted. The facts before us, as described by M.B., do not reasonably suggest inadvertence or permit an innocent explanation. M.B. was wearing what she described as a nightgown over pajama pants. According to her testimony, which the juvenile court believed and therefore we are bound to as well, T.C. reached under her gown, under her pajama pants, and inside her underwear to touch her "butt" "by the crack." *Transcript* at 32. He did this in the middle of the night as she slept and then stared at her when she woke up, arose, and walked out of the room. We summarily reject T.C.'s suggestion that sexual intent can be reasonably inferred only if there was evidence that T.C. was masturbating or exhibiting signs of sexual arousal while he touched her. The natural and usual purpose of reaching underneath three layers of clothing to touch M.B. where he did was to satisfy T.C.'s sexual desires. The inference that the touching was committed with sexual intent lies comfortably within the margins of reasonableness and easily supports the true finding. The evidence was sufficient to support the true finding.

Judgment affirmed.

BROWN, J., and PYLE, J., concur.