**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Sep 03 2014, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**COREY L. SCOTT**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| J.J., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1401-JV-18 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Gary K. Chavers, Magistrate
Cause No. 49D09-1310-JD-3028

**September 3, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

J.J. was adjudicated delinquent for the act of Robbery, as a Class B felony if committed by an adult.[1]  He appeals the juvenile court's dispositional decree awarding his wardship to the Indiana Department of Correction ("DOC").  We affirm.

**Issue**

J.J. presents one issue for review: whether the juvenile court abused its discretion by committing him to the DOC.

**Facts and Procedural History**

Fourteen-year-old J.J. and eighteen-year-old Stanley Knight ("Knight") found a gun, which they planned to use to rob an individual they would select at random.  (Tr. 9, 12.)  J.J. subsequently purchased ammunition for the gun so that they could carry out the robbery.  (Tr. 12.)  On October 6, 2013, J.J. and Knight approached Wendy Justus ("Justus") while she was jogging on the Monon Trail in Marion County.  (Tr. 8.)  Knight pointed the gun at Justus's head, forced her to the ground, and demanded that she give up her property.  (Tr. 8, 43.)  J.J. and Knight took Justus's cell phone, headphones, and canister of mace, and then fled.  (Tr. 8.)  When Indianapolis Police Department officers apprehended J.J. shortly thereafter, J.J. was in possession of the gun, a box of ammunition, and the mace.  (Tr. 11.)

On October 7, 2013, the State alleged that J.J. had committed the following acts that, if committed by an adult, would constitute:  Robbery, as a Class B felony; Confinement, as a

_____

[1] Ind. Code § 35-42-5-1 (2013).

2

Class B felony; Dangerous Possession of a Firearm, as a Class A misdemeanor; and Carrying a Handgun without a License, as a Class A misdemeanor. (Appellant's App. 20.)

On October 29, 2013, the juvenile court accepted J.J.'s admission agreement and entered a true finding of Robbery, as a Class B felony if committed by an adult. (Appellant's App. 50.) The State dismissed the other allegations. (Appellant's App. 50.) The juvenile court ordered J.J. to submit to a psychological evaluation and set a disposition hearing for a later date. (Tr. 52.).

At the disposition hearing on November 20, 2013, an officer from the Marion County Juvenile Probation Department (the "Probation Department") recommended that J.J. be released on probation with electronic monitoring, followed by home detention. (Tr. 34; Appellant's App. 84.) The Probation Department also recommended that J.J. receive extensive therapy and counseling services for the substance abuse and mental health issues identified during his psychological evaluation. (Appellant's App. 84.) The juvenile court took the testimony and recommendations under advisement and set a follow-up hearing. (Tr. 51-52.)

On November 27, 2013, the juvenile court determined that the Probation Department's recommendations were inconsistent with community safety. (Tr. 56; Appellant's App. 88.) The court ordered the Probation Department to seek out-of-home placement for J.J. at a specific residential facility in Pennsylvania. (Tr. 56; Appellant's App. 88.)

After the hearing, the Probation Department issued an addendum report stating that J.J. was not accepted into the Pennsylvania facility due to a prior suicide attempt and

hallucinations. (Appellant's App. 96.) However, the Probation Department reported that J.J. was accepted into a program at Resource, a residential treatment facility in Indianapolis. (Appellant's App. 96.)

On December 18, 2013, the juvenile court held a final disposition hearing and awarded wardship of J.J. to the DOC. (Tr. 63; Appellant's App. 15.) The court found that "while being consistent with public safety[,] this is the least restrictive and appropriate alternative available to the Court at this time." (Tr. 64.) J.J. filed an emergency motion for reconsideration on December 23, 2013. (Appellant's App. 100.) The court denied his motion. (Appellant's App. 103.)

J.J. now appeals the juvenile court's dispositional decree.

## Discussion and Decision

The choice of a specific disposition of a juvenile adjudicated delinquent is within the sound discretion of the juvenile court. D.S. v. State, 829 N.E.2d 1081, 1084 (Ind. Ct. App. 2005). This discretion is subject to the statutory considerations of the safety of the community, the welfare of the child, and the policy of favoring the least harsh disposition. Id. We may overturn the juvenile court's disposition order only if the court abused its discretion. D.E. v. State, 962 N.E.2d 94, 97 (Ind. Ct. App. 2011). An abuse of discretion occurs when the juvenile court's judgment is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom. Id.

4

It is Indiana's policy to "ensure that children within the juvenile justice system are treated as persons in need of care, protection, treatment, and rehabilitation." I.C. § 31-10-2-1(5). To effectuate this policy, Indiana Code section 31-37-18-6 sets forth several factors the juvenile court must consider when entering a dispositional decree. The statute provides that, if consistent with the safety of the community and the best interest of the child, the court shall enter a dispositional decree that: (1) is in the least restrictive (most family like) and most appropriate setting available, and is close to the parents' home, consistent with the best interest and special needs of the child; (2) least interferes with family autonomy; (3) is least disruptive of family life; (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian. I.C. § 31-37-18-6.

Without question, the statute requires the juvenile court to select the least restrictive placement in most situations. K.A. v. State, 775 N.E.2d 382, 386 (Ind. Ct. App. 2002). However, the statute contains language that indicates that a more restrictive placement might be appropriate under certain circumstances. Id. at 386-87. Specifically, the statute requires the least restrictive placement only "[i]f consistent with the safety of the community and the best interest of the child." I.C. § 31-37-18-6; K.A., 775 N.E.2d at 387.

The juvenile court awarded wardship of J.J. to the DOC. J.J. contends that commitment to the DOC is not the appropriate or least restrictive option available to the court. (Appellant's Brief 4.) He argues that the juvenile court abused its discretion because the court failed to follow the Probation Department's home-based disposition

5

recommendations or place J.J. at the Resource facility. (Appellant's Brief 4.) J.J. also cites his age, absence of prior delinquent history, and good grades as factors that weigh in favor of a less restrictive placement. (Appellant's Brief 10.)

Here, J.J. purchased ammunition for a gun with the plan to rob an individual at gunpoint. J.J. and Knight then used the gun to threaten and rob a randomly-selected individual on the Monon Trail, "a location where people . . . citizens go for various reasons including for exercise, for social contact." (Tr. 63.) At the second disposition hearing, the court determined that the Probation Department's "recommendation for [J.J.] to be returned to his guardian's home . . . is not a recommendation that is consistent with the safety of the community." (Tr. 56.) The court specifically asked that J.J. be referred to an out-of-state residential facility, to which J.J. was not accepted. (Tr. 56; Appellant's App. 96.) At the final hearing, the court did not accept the Probation Department's alternative placement at a local facility and found that, due to the nature of the delinquent act, commitment to the DOC was "consistent with public safety and the best interest of the child." (Tr. 63.)

It is well settled that there are times when commitment to a suitable public institution is in the best interest of the juvenile and society. J.S. v. State, 881 N.E.2d 26, 29 (Ind. Ct. App. 2008). "In some instances, confinement may be one of the most effective rehabilitative techniques available." B.K.C. v. State, 781 N.E.2d 1157, 1172 (Ind. Ct. App. 2003) (upholding the juvenile court's order of wardship of B.K.C. to the DOC after fourteen-year-old B.K.C. was adjudicated delinquent for the act of Robbery, as a Class B felony if committed by an adult, for robbing a restaurant at gunpoint with an older accomplice). In

6

this case, J.J. was adjudicated delinquent after committing a "very concerning," dangerous act. (Tr. 63.) Under these circumstances, we cannot say the juvenile court abused its discretion in awarding wardship of J.J. to the DOC.

Affirmed.

NAJAM, J., and PYLE, J., concur.