## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



FILED

Jul 30 2019, 7:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Deborah Markisohn
Marion County Public Defender Agency
– Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

R.J.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

July 30, 2019

Court of Appeals Case No.
19A-JV-72

Appeal from the Marion Superior
Court

The Honorable Marilyn A.
Moores, Judge

The Honorable Gary K. Chavers,
Magistrate

Trial Court Cause No.
49D09-1806-JD-741

**Mathias, Judge.**

[1] R.J. was adjudicated a delinquent child for committing armed robbery, which would be a Level 3 felony if committed by an adult. R.J. appeals the trial court's dispositional order, arguing that the evidence is insufficient to establish that he committed armed robbery.

[2] We affirm.

## Facts and Procedural History

[3] On May 26, 2018, at around 11 p.m., fourteen-year-old R.J. and three other boys were in a vehicle waiting for "some females" and smoking marijuana. Tr. p. 38. R.J. was good friends with one of the boys in the car and identified him as J.M. R.J. also identified the driver of the car as D. and the other occupant as J. While sitting in the car, the boys saw A.S. walking outside the Shadeland Terrace Apartments. A.S. was on his way to a friend's house to sell his friend a BB gun, which A.S. had in his pocket. The boys exited the car and rapidly approached A.S. A.S. recognized R.S. and J.M. from school.

[4] J.M. grabbed A.S.'s arms aggressively and pinned down A.S. so that A.S. could not move. D. and J. were standing an arm's length away from A.S. and either D. or J. had a gun. D. and J. threatened A.S. while J.M. made demands to A.S. A.S. was afraid he would be shot because one of the boys who was carrying the gun "cocked back the gun." Tr. p. 16. Either D. or J. hit A.S. on the jaw with the gun and took A.S.'s cell phone as well as the BB gun. A.S. testified that, "I felt like if I didn't give them what I had, they would'a shot me." *Id.*

[5] R.J. was standing about ten feet away from the robbery as it occurred. R.J. could see what was happening, as A.S. testified that R.J. was "standing there and looking around." *Id.* at 14. R.J. later stated that he got out of the car because he "thought something was going wrong" and that "something was happening." *Id.* at 47. R.J. did not take anything from A.S. or hit A.S. R.J. had a phone on his person and did not call for help. R.J. never tried to physically or verbally tell his friends to stop what they were doing.

[6] After the robbery, J.M., D., J. and R.J. all got back in the car and drove away. R.J. went to his grandparents' house and did not inform them of the incident. A.S. waited five to ten minutes before calling 911 with his second phone he had that was not taken during the robbery. A.S. identified R.J. to the police by showing a Snapchat photo and also identified J.M. Later, R.J. stated that he got back inside the car after he had just witnessed what had happened because he, "thought it would be easier for them to give me a ride home." *Id.* at 51.

[7] On June 26, 2018, the State filed a delinquency petition alleging that R.J. was a delinquent for committing armed robbery, a Level 3 felony if committed by an adult, and criminal confinement, a Level 3 felony if committed by an adult. At the denial hearing on October 19, 2018, testimony was presented that established R.J. as an accomplice to the charge of armed robbery. At the conclusion of the denial hearing, the trial court adjudicated R.J. to be a delinquent for committing armed robbery and merged the criminal confinement

count[1] into the armed robbery count. On December 5, 2018 and December 11, 2018, the juvenile court held a dispositional hearing. A dispositional order was entered on December 11, 2018, and the trial court ordered wardship of R.J. to the Department of Correction with a recommended period of twelve months. R.J. now appeals.

## Discussion and Decision

[8] R.J. argues that the evidence is insufficient to support the delinquency adjudication because the evidence does not establish beyond a reasonable doubt that R.J. was an accomplice in the robbery. When the State seeks to have a juvenile adjudicated as a delinquent for committing an act which would be a crime if committed by an adult, the State must prove every element of the crime beyond a reasonable doubt. *J.S. v. State*, 843 N.E.2d 1013, 1016 (Ind. Ct. App. 2006), *trans. denied*. In reviewing a juvenile adjudication, this court will consider only the evidence and reasonable inferences supporting the judgment and will neither reweigh evidence nor judge the credibility of the witnesses. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the juvenile was guilty beyond a reasonable doubt, we will affirm the adjudication. *Id.*

[9] Here, the State alleged R.J. committed Level 3 felony armed robbery. The State was required to prove that: (1) R.J. did knowingly or intentionally; (2)

---

[1] A finding of not true was entered for the criminal confinement count and merged with armed robbery per Indiana case law.

take a cell phone and BB gun from A.S; (3) by putting A.S. in fear; and (4) while armed with a deadly weapon. Ind. Code § 35-42-5-1(a). The State alleged R.J. was delinquent when he committed armed robbery, a Level 3 felony, if committed by an adult, on the theory that R.J. was criminally liable as an accomplice because, even if he did not actually commit the robbery, he was acting in concert with J.M., D. and J.

[10] Under the accomplice liability statute, a person "who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense[.]" Ind. Code § 35-41-2-4. To find R.J. guilty of robbery if committed by an adult under an accomplice liability theory, the trial court must have found that R.J. knowingly and intentionally aided, induced, or caused J.M., D. and J. to commit robbery. *See Small v. State*, 531 N.E.2d 498, 499 (Ind. 1988). Factors considered by the fact-finder to determine whether a defendant aided another in the commission of a crime include: (1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime. *Edgecomb v. State*, 673 N.E.2d 1185, 1193 (Ind. 1996). While the defendant's presence during the commission of the crime or his failure to oppose the crime are, by themselves, insufficient to establish accomplice liability, the trier of fact may consider them along with the factors above to determine participation. *Echols v. State*, 722 N.E.2d 805, 807 (Ind. 2000).

[11] R.J. asserts that the evidence presented at the delinquency hearing failed to establish any overt action on his part that demonstrated his knowing and willing participation in the robbery. R.J. contends that he was merely a "bystander." Appellant's Br. p. 17. We disagree. In support of their argument, the State cites *B.K.C. v. State,* 781 N.E.2d 1157 (Ind. Ct. App. 2003). In *B.K.C.*, B.K.C. accompanied Terry Williams into the Dairy Queen restaurant. *Id.* at 1165. Williams placed an order for himself and B.K.C., and B.K.C. gave Williams the money to pay for the food order. *Id.* After Williams brandished his weapon and it became apparent that Williams intended to rob the Dairy Queen, B.K.C. did nothing to oppose the commission of the robbery. *Id.* Rather, he ran and hid with Williams as other customers, who were unaware of the robbery, entered the restaurant. *Id.* B.K.C. was found to be an accomplice to the charge of armed robbery and adjudicated as a delinquent. *Id.* at 1172.

[12] The facts of the present case are much like those in *B.K.C.* First, in both cases, the juvenile arrived with the armed individual[s] who would commit the robbery. Next, the individual brandished a firearm and committed the robbery. After the armed robbery took place, both B.K.C. and R.J. fled with the individual[s] who had just robbed someone else using a firearm. Much like in *B.K.C.*, R.J. did not try to stop what was happening or oppose the commission of the crime in any way. R.J. was present at the scene of the crime as he was a mere ten feet away. The record shows R.J. and J.M. were good friends, and R.J. had previous contact with D. and J. Tr. pp. 38, 42. R.J. had a companionship with J.M., D. and J., who engaged in the crime of armed

robbery. R.J. admits that he did nothing to oppose the armed robbery as he was "standing there and looking around." *Id.* at 14. A reasonable fact-finder could infer that R.J. was acting as a lookout to alert his companions of police presence. Lastly, R.J.'s course of conduct before, during, and after the robbery all support accomplice liability. Before the robbery, R.J. was smoking marijuana with the three boys, did nothing to stop the crime during the robbery, and left in the car with the group that he had just witnessed commit armed robbery. From this evidence, a reasonable trier of fact could have determined beyond a reasonable doubt that R.J. was an accomplice during the commission of the robbery.

# Conclusion

[13] Based on the facts and circumstances before us, the State presented sufficient evidence to support R.J.'s delinquency adjudication for committing armed robbery as an accomplice that would constitute a Level 3 felony if committed by an adult.

May, J., and Brown, J., concur.