**Martha Quiroz MADARAS,
Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 3–281A41.**

Court of Appeals of Indiana,
Third District.

Sept. 15, 1981.

Charles A. Asher, South Bend, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

On November 3, 1980, the St. Joseph County Probate Court, sitting in its juvenile court capacity, found Martha Quiroz Madar-

as to be a delinquent child and entered a dispositional decree ordering that she be confined in the St. Joseph County Jail for seven days. Madaras does not challenge the court's finding of delinquency. She does assert that (1) the court's dispositional decree was punitive in nature and thus violative of IC 31–6–4–16(d), (2) the court abused its discretion in entering its decree for seven days confinement, and (3) the court erred in failing to accompany its dispositional decree with findings of fact as required by IC 31–6–4–16(j).[1]

While Madaras was under eighteen years of age at the time she committed the offense which formed the basis for this proceeding,[2] at the time of the court's disposition she was nineteen years old, divorced, the mother of a child, and living with the child. Without making any comments or findings concerning Madaras' need for care, treatment or rehabilitation, the court ordered that she be confined in the St. Joseph County Jail for seven days. Madaras urges the court's disposition was purely punitive in nature and thus violative of the spirit and purpose behind this state's juvenile laws. She argues that punishment, absent findings that such would aid in the treatment or rehabilitation of the child, is not an appropriate motivation for juvenile dispositions.

Madaras premises her argument upon the juvenile law policies of this state as reflected in IC 31–6–1–1(3) which provides that it is the purpose of the juvenile law "to insure that children within the juvenile justice system are treated as persons in need of care, treatment, rehabilitation, or protection." In support of her argument, she refers the court to IC 31–6–4–16(a) and (d) which she urges reflect this purpose. IC 31–6–4–16(a) states:

"(a) The juvenile court shall hold a dispositional hearing to consider:

(1) alternatives for the care, treatment, or rehabilitation for the child;

(2) the necessity, nature, and extent of the participation by a parent, guardian, or custodian in the program of care, treatment, or rehabilitation for the child; and

(3) the financial responsibility of the parent or guardian of the estate for any services provided for himself or the child."

IC 31–6–4–16(d) further provides:

"(d) When consistent with the safety of the community and the welfare of the child, the juvenile court shall enter a dispositional decree that:

(1) least interferes with family autonomy;

(2) is least disruptive of family life;

(3) imposes the least restraint on the freedom of the child and his parent, guardian, or custodian; and

(4) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian."

Of primary importance to the policies behind our juvenile justice system is the flexibility the system provides in dealing with juvenile problems. The legislature has provided juvenile courts with a myriad of dispositional alternatives to fit the unique and varying circumstances of each child's problems. Among the alternatives available, IC 31–6–4–16(g)(5) states:

"(g) If the child is a delinquent child under section 1(b)(1) of this chapter, the juvenile court may:

\* \* \* \* \* \*

(5) order confinement in a detention facility for children or in the juvenile part of the county jail for not more than ten (10) days."

---

1. Madaras has already served her term of confinement thus rendering an attack on her sentence potentially moot. *See Lauchli v. United States* (S.D.Ind.1968), 292 F.Supp. 538. However, because of the strong public interest in resolving questions regarding our juvenile code and because the issue raised may regularly escape appellate review, we choose to address this matter on the merits. *See State v. Vore* (1978), 268 Ind. 340, 375 N.E.2d 205.

2. Madaras was charged with dealing in phencyclidine, "PCP," a Schedule III controlled substance. IC 35–48–4–2. She later admitted to an amended charge of possession.

Thus, while the juvenile code creates a presumption in favor of disposing of juvenile matters using the least severe disposition available to the court which will serve the needs of the case, *Atkins v. State* (1972), 259 Ind. 596, 290 N.E.2d 441, the code explicitly recognizes that in some instances commitment may be in the best interests of the child and society in general.

Madaras would appear not to disagree with the foregoing, but rather argues that where she had been living a "clean" life for the one and a half years between commission of the offense and the court's disposition, and as she was nineteen years of age and independently supporting herself and her child, the court's disposition could only be viewed as punitive, as opposed to rehabilitative, in nature. We can not agree with this contention.

■ Madaras admitted to committing a serious offense, possession of a controlled substance, and the court had a responsibility to act. The court did not exercise its right to waive jurisdiction and have her prosecuted as an adult, but rather chose to keep the matter in juvenile court. Given Madaras' age and independence, the court's dispositional alternatives were limited. We cannot conclude that merely because the probate referee stated he felt the offense merited "some type of punishment," it follows his dispositional decree was purely punitive. As our legislature has recognized, a short term of confinement can serve many functions, not all of them being punitive in nature. In some instances, confinement may be one of the most effective rehabilitative techniques available. A delinquent child's first exposure to the consequences he will face should he continue to break the law may indeed be the best treatment available in helping a young person readjust his values and priorities in life.[3] We conclude

the juvenile court acted fully within the law and the bounds of its discretion when it determined a short period of commitment was the best alternative under the circumstances. *See Anton v. State* (1967), 140 Ind.App. 574, 224 N.E.2d 516.

■ We finally address the court's alleged error in failing to accompany its dispositional decree with findings of fact as required by IC 31–6–4–16(j).[4] While the court's failure to make findings was clearly error, we deem any error to have been waived since we have concluded the trial court acted properly in ordering confinement and Madaras has already served her sentence. No purpose would thus be served in requiring the court to detail its reasons for the disposition. In so holding, however, we do not mean to diminish the important function findings of fact serve in appellate review or to imply that the requirements of IC 31–6–4–16(j) are in any way discretionary.

No reversible error having been shown, this cause is affirmed.

Affirmed.

HOFFMAN, P. J., concurs.

STATON, J., concurs in result.

---

3. These same policies are reflected in IC 35–4.-1–4–18, the adult "shock probation" statute, which permits a trial court, within 180 days after imposing a sentence, to reduce or suspend a defendant's sentence on the theory that the actual experience of incarceration can have a strong rehabilitative effect on the defendant.

4. IC 31–6–4–16(j) provides:

"(j) The juvenile court shall accompany its dispositional decree with findings of fact upon the record concerning the needs of the child for care, treatment, or rehabilitation and for participation by the parent, guardian, or custodian; and it shall specify its reasons for the disposition."