**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**COREY L. SCOTT**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

FILED

Dec 31 2012, 10:59 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| T.S., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1204-JV-213 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gary K. Chavers, Judge Pro Tem
The Honorable Geoffrey A. Gaither, Magistrate
Cause No. 49D09-1202-JD-452

**December 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

T.S. was alleged to be a juvenile delinquent for committing acts that, if committed by an adult, would be Class B felony confinement;[1] Class C felony battery with a deadly weapon;[2] Class A misdemeanor carrying a handgun without a license;[3] and Class A misdemeanor dangerous possession of a firearm.[4] T.S. admitted committing Class C felony battery with a deadly weapon, and the State dismissed the other allegations. After a dispositional hearing, the juvenile court committed T.S. to the Department of Correction (DOC) for an indeterminate term in a juvenile correctional facility. T.S. appeals, alleging there were alternative less restrictive placements and treatment available. We affirm.

## FACTS AND PROCEDURAL HISTORY

On January 27, 2012, Cortland McGrown was in a fistfight with William Jackson, who is T.S.'s adult cousin. After that fight, Jackson told McGrown that he would kill him.

Then, on February 15, McGrown and his wife drove their three children to a school bus stop in Indianapolis to drop off their children. When McGrown's van stopped at the bus stop, Jackson and sixteen-year-old T.S. were there waiting for him. Jackson told McGrown: "Get out. I'm going to kill you right here." (App. at 56.) When McGrown refused to get out of the van, Jackson shattered the van's window with a gun, and T.S. helped Jackson drag McGrown from the van. While McGrown was on the ground, T.S. used his semi-automatic handgun to repeatedly strike McGrown's back, neck, and head. Jackson fired his gun at

---

[1] Ind. Code § 35-42-3-3.
[2] Ind. Code § 35-42-2-1.
[3] Ind. Code § 35-47-2-1.
[4] Ind. Code § 35-47-10-5.

2

McGrown's head, but the bullet entered and exited only McGrown's scalp. T.S. and Jackson ran away.

Both McGrown and his wife identified T.S. and Jackson as the attackers.[5] At his adjudication hearing, T.S. admitted he used a handgun to strike McGrown, and he also acknowledged McGrown continued to experience physical pain from the beating. The court accepted his admissions and ordered a pre-dispositional report.

The pre-dispositional report revealed T.S. had been in contact with the juvenile justice system a number of times. At age thirteen, T.S. shot his sister with a BB gun and, therefore, was arrested for committing acts that would be criminal recklessness and battery, but the State did not file a delinquency petition. At age fourteen, T.S. carried a knife to school and was arrested for illegal possession of a knife on school property, but no delinquency petition was filed. Also at age fourteen, T.S. was arrested and the State filed a delinquency petition for acts that would be attempted burglary, attempted residential entry, criminal trespass, and criminal mischief, but the petition was later dismissed. At fifteen, T.S. was adjudicated a delinquent for possessing marijuana and ordered to serve probation, which was terminated unsuccessfully after T.S. and his mother failed to follow through with services.

T.S. reported a substance abuse history that included smoking three or four marijuana cigars per day. T.S. completed a substance abuse assessment in March of 2011, but he was unsuccessfully discharged from individual and group substance abuse counseling due to his

---

[5] The State charged Jackson, who was an adult, with Class A felony attempted murder and Class B felony criminal confinement.

lack of attendance. Home-based services were ordered for T.S. as part of a child in need of services proceeding involving T.S.'s son, but "[a]ll services were closed out due to [T.S.'s] lack of participation." (*Id.* at 69.) A juvenile risk assessment indicated, as of March 28, 2012, T.S. was a "High Risk" to reoffend. (*Id.*)

The probation officer that prepared the pre-dispositional report recommended T.S. be committed to the DOC:

> At this stage, Probation believes the youth needs to be acutely aware that his pattern of behavior will result in commitment to the department of corrections [sic] in order to provide protection to the community against further criminal offenses by the youth.
>
> **Dispositional Options Considered and Evaluation of each Option:**
> **Community-based Services:**
> Youth was arrested on serious charges after receiving community and family-based supports, but failed to participate. For the safety of this community it is not recommended that he participate in community based services.
> **Out-of-home placement:**
> Placement is not an option due to him not currently suffering from a diagnosis that would require him to be placed.
> **Commitment to the Department of Correction:**
> Youth was arrested on a serious offense after receiving probation supervision and services. Youth have [sic] a history of being required to participate in community based services and being unsuccessfully discharged due to lack of participation. For the safety of this community it is recommended that he be committed to the Indiana Department of Corrections [sic].

(*Id*. at 71-72) (emphases in original).

The juvenile court ordered a psychological evaluation, and the report therefrom stated that T.S.'s mother "may not fully understand his psychosocial profile and his tendency toward drug abuse, antisocial influence and antisocial thinking." (*Id.* at 98.) The

4

psychologist recommended: "If [T.S.] and his mother cannot be immediately 100% compliant with services and requirements, it is suggested that [T.S.'s] risks be managed in an out-of-home setting." (*Id.* at 99.)

The juvenile court found and ordered: "Sending [T.S.] home . . . is not the right thing to do. I believe that the recommendations from probation are in [T.S.'s] best interest and I believe that's the right thing to do. I am going to commit [T.S.] to [the] Department of Correction for placement at Boy's School." (Tr. at 30.)

## DISCUSSION AND DECISION

The juvenile court is accorded wide latitude and great flexibility in its dealings with juveniles. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). The juvenile court's discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy favoring the least harsh disposition. *Id.* The least restrictive placement is required only "if it is consistent with the 'safety of the community and the best interest of the child.'" *D.C. v. State*, 935 N.E.2d 290, 292 (Ind. Ct. App. 2010) (quoting Ind. Code § 31-37-18-6), *summarily aff'd in relevant part* 958 N.E.2d 757, 758 (Ind. 2011). Although rehabilitation is the goal of the juvenile justice system, we recognize that "'in some instances, confinement may be one of the most effective rehabilitative techniques available.'" *N.D.F. v. State*, 775 N.E.2d 1085, 1089 (Ind. 2002) (quoting *Madaras v. State*, 425 N.E.2d 670, 672 (Ind. Ct. App. 1981)).

The trial court did not abuse its discretion in sentencing T.S. to the DOC because the evidence supported an inference that disposition was necessary for the community's safety.

T.S. and Jackson pulled McGrown out of his van, T.S. pistol-whipped him, and Jackson shot McGrown in the head – all in retaliation for a prior fight between Jackson and McGrown. Although his prior involvement with the juvenile justice system had not proceeded to adjudication, those dismissed actions do demonstrate that interaction with the system did not deter T.S. from committing future criminal acts. In addition, T.S.'s actions appear to have grown more violent as he has gotten older.

T.S. was found to be a high risk to reoffend, and he has a history of not successfully completing counseling and home-based services. T.S.'s arguments that he should have had a less restrictive placement fail because of his prior failures and his mother's inability to urge him to follow through with the services previously offered. Unlike the cases T.S. cites, here he committed a violent offense and has a record of refusing to cooperate with service providers. In fact, the predisposition report indicated:

> It is in the best interests of the child to be removed from the home environment and remaining in the home would be contrary to the health and welfare of the child because:
> Youth has received previous services from this Court, however, he continues to re-offend. Youth was unsuccessfully discharged from his previous term of probation due to both youth and mother failing to follow through with services. At this point, youth is a risk to himself and to the community.

(App. at 70.)

As the record contains evidence demonstrating the safety of the community and T.S.'s best interests were served by committing him to the DOC, the juvenile court was not required

6

to choose a less restrictive placement. *See J.S.*, 881 N.E.2d at 29.  Accordingly, we affirm.

Affirmed.

ROBB, C.J., and PYLE, J., concur.