## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 28 2018, 8:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

A.H.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

November 28, 2018

Court of Appeals Case No.
70A01-1712-JV-2942

Appeal from the Rush Circuit Court

The Honorable David E. Northam, Judge

Trial Court Cause No.
70C01-1508-JD-94

**Pyle, Judge.**

# Statement of the Case

A.H. appeals his adjudication as a delinquent child for having committed criminal mischief as a Class A misdemeanor if committed by an adult.[1] A.H. argues that the juvenile court erred when it modified his dispositional decree and placed him in the Indiana Department of Correction ("DOC"). Additionally, A.H. argues that his counsel was ineffective for allowing A.H. to admit to probation violations. Lastly, A.H. argues that the juvenile court abused its discretion by placing him in the DOC. We conclude that, because the juvenile court retained jurisdiction of A.H., it did not err in modifying his dispositional decree, and A.H.'s counsel was not ineffective for allowing A.H. to admit to probation violations. Furthermore, it was within the juvenile court's discretion to commit A.H. to the DOC.

We affirm.

# Issues

1. Whether the juvenile court erred by modifying A.H.'s dispositional decree and placing him in the DOC.

2. Whether A.H. received ineffective assistance of counsel.

3. Whether the juvenile court abused its discretion when it ordered A.H. committed to the DOC.

---

[1] IND. CODE § 35-43-1-2.

## Facts

On July 27, 2015, eleven-year-old A.H. and another person traveled to the Riverside Park Amphitheater in Rushville, Indiana. They damaged a garage door, stole and damaged a golf cart, and disturbed or damaged other property belonging to the City of Rushville. The next day, A.H. and the other person returned to the park, kicked in the door to the concession stand, and stole soda pop and potato chips. The two then pulled down a string of lights from a tent and broke the light bulbs. The damages from the two incidents totaled $1,413.92.

Following an investigation by Rushville police officers, the State filed a petition alleging that A.H. was a delinquent for criminal mischief, a Class A misdemeanor if committed by an adult; auto theft, a Level 6 felony if committed by an adult; and criminal trespass, a Class A misdemeanor if committed by an adult. At his initial hearing, held on October 8, 2015, and pursuant to a plea agreement, A.H. admitted to criminal mischief. The juvenile court conducted a dispositional hearing and adjudicated A.H. a delinquent. The court ordered A.H. to be placed on probation for one year, undergo a mental health evaluation and follow all recommendations, complete ten hours of community service through the Rushville Parks Department, and participate in the Indiana Kids Tutoring Program at the Boys and Girls Club.

On January 31, 2016, A.H. committed a new offense. He spray-painted vulgar words and pictures on the dugout of the Rushville Parks Department baseball field, causing approximately $1,000.00 worth of damage. The Rush County

probation department filed a request to modify A.H.'s dispositional decree. A hearing was held on April 19, 2016, during which A.H. admitted to violating his probation. The juvenile court granted the probation department's request, modified the dispositional decree, and ordered that A.H. be placed on home detention for thirty days and referred to a program to receive intensive home-based services.

[6] On September 26, 2016, the probation department filed a second request to modify A.H.'s dispositional decree, alleging that A.H. had fifteen school-related disciplinary referrals between August 8, 2016, and September 19, 2016, was out past curfew, and left his home without permission on two separate occasions. A hearing was held on November 28, 2016, during which A.H. admitted to the violations. The juvenile court granted the probation department's request for modification of the dispositional decree. The court ordered A.H.'s probation extended for six months, to April 8, 2017, and ordered A.H. to complete a psychological evaluation and follow all recommendations.

[7] Following the evaluation, A.H. was diagnosed with attention-deficit hyperactivity disorder, unspecified depressive disorder, and conduct disorder. It was recommended that A.H. be placed in a residential treatment facility. Based on the recommendation, the trial court modified A.H.'s dispositional decree and ordered him placed at a residential youth and family treatment center.

[8] At the treatment center, A.H. was provided with medication management, individual therapy, family therapy, independent living training, and family visits. He behaved well and was discharged in June 2017.

[9] However, on September 1, 2017, the probation department filed a report indicating that, after A.H. was discharged from the treatment center, he received eight school-related disciplinary referrals that resulted in suspensions. The report stated that A.H. was "refusing to go to class, using inappropriate language toward staff and other students[,] and refusing to get on the appropriate bus to go home." (App. Vol. 2 at 176). On September 12, 2017, the probation department filed a third request for modification of A.H.'s dispositional decree, citing the school-related disciplinary referrals, A.H.'s refusal to attend school on four separate days, curfew violations, and his failure to provide accurate information during a mental health assessment. The probation department recommended that A.H. be committed to the DOC.

[10] At an initial hearing held on October 5, 2017, A.H. denied the allegations. A factfinding hearing was held on November 27, 2017, during which A.H. admitted to the allegations. The State and the probation department recommended that A.H. be committed to the DOC. A.H. asked the juvenile court to extend his probation and allow him to enroll in an alternative education program. At the conclusion of the hearing, the juvenile court found that the allegations were true, that the dispositional decree should be modified, and that it was in A.H.'s best interests to be placed in the DOC. A.H. now appeals.

# Decision

On appeal, A.H. argues that (1) the juvenile court erred by modifying his dispositional decree and placing him in the DOC; (2) he received ineffective assistance of counsel; and (3) the juvenile court abused its discretion when it ordered him committed to the DOC. We will address each of these arguments in turn.

## 1. Modification of Dispositional Decree

A.H. argues that the trial court erred when it granted the State's third request to modify his dispositional decree and ordered him committed to the DOC based upon incidents that, according to A.H., occurred after his probationary period had run. A.H. asserts that he was no longer on probation when the alleged violations set forth in the third petition for modification of his dispositional decree occurred. A.H. contends that "[d]espite the fact that [he] admitted to committing the acts in the petition, the modification of his dispositional decree should still be reversed because the State did not prove the conduct occurred during the probationary period." (A.H.'s Br. 17). The State maintains that A.H. was still subject to the juvenile court's jurisdiction at the time the violations occurred.[2] We agree.

---

[2] The State also argues that A.H. waived appellate review of this issue when he admitted to the allegations set forth in the third petition for modification of his dispositional decree. However, we decline the State's invitation to resolve this matter on the basis of waiver. *See Trammell v. State*, 45 N.E.3d 1212, 1216-17 (Ind. Ct. App. 2015) (finding that defendant was under no obligation to point out to the State that it failed to prove

[13]    INDIANA CODE § 31-30-2-1, provides, in pertinent part:

> [T]he juvenile court's jurisdiction over a delinquent child or a child in need of services and over the child's parent, guardian, or custodian continues until:
>
> > (1) the child becomes twenty-one (21) years of age, unless the court discharges the child and the child's parent, guardian, or custodian at an earlier time; or
> >
> > (2) guardianship of the child is awarded to the department of correction.

A juvenile court that retains jurisdiction over a juvenile may modify a dispositional decree so long as it retains such jurisdiction. *W.L. v. State*, 707 N.E.2d 812, 814 (Ind. Ct. App. 1999); *see also* I.C. § 31-37-22-1. Here, it is clear from the record that the juvenile court had not discharged then thirteen-year-old A.H. and his parents. Nor had the juvenile court awarded guardianship of A.H. to the DOC prior to the filing of the third request to modify the disposition decree. Therefore, the court retained jurisdiction of A.H. and the authority to modify A.H.'s dispositional decree and place him in the DOC. No error occurred here.

## 2. Ineffective Assistance of Counsel

its case and that an admission to conduct was not admission that defendant violated probation by engaging in the conduct).

[14]    A.H. also argues that he received ineffective assistance of counsel during his November 27, 2017 factfinding hearing. According to A.H., his counsel's performance was deficient because counsel allowed A.H. to "admit to a probation violation for acts that occurred several months after A.H. should have been done with probation." (A.H.'s Br. 19).

[15]    A.H. maintains that he has a right to counsel as provided by the Sixth Amendment of the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984). The State argues that because A.H. is not a criminal defendant, he is not entitled to the protections afforded by the Sixth Amendment, and that, instead, his right to counsel is rooted in statute and the right to due process.

[16]    Without deciding that, in fact, juveniles in delinquency proceedings are entitled to application of the same assistance of counsel standards as those applied in adult criminal cases, we find that counsel's representation was not deficient. Under either standard set forth by the parties, A.H. was afforded effective assistance of counsel. The juvenile court retained jurisdiction of A.H. and the authority to modify A.H.'s dispositional decree. Thus, counsel did not render ineffective assistance by allowing A.H. to admit to the violations of his probation.

## 3. Commitment to DOC

[17]    A.H. also contends that the juvenile court abused its discretion by committing him to the DOC. A juvenile court is afforded wide latitude and great flexibility

in its dealings with juveniles. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). The specific disposition of a delinquent child is within the sound discretion of the juvenile court, and we will reverse only if the order is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.* The court's discretion is subject to the statutory considerations of the child, the safety of the community, and the policy of favoring the least harsh disposition. *Id.*

A.H. maintains that the juvenile court should not have ordered him committed to the DOC,

> [c]onsidering the amount of punitive-type rehabilitation that A.H. had already received from his misdemeanor offense, and considering the total lack of any attempt by the State to prove that wardship to the D.O.C. was the least restrictive, most family like setting available, or that it was the proper individualized treatment for A.H.

(A.H.'s Br. 25). In support of his argument, A.H. refers to INDIANA CODE § 31-37-18-6, which sets forth several factors a juvenile court must consider when entering a dispositional decree. The section provides as follows:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> > (A) in the least restrictive (most family like) and most appropriate setting available; and

> > (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> > (2) least interferes with family autonomy;
>
> > (3) is least disruptive of family life;
>
> > (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> > (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.
>
> I.C. § 31-37-18-6.

[19]  Without question, INDIANA CODE § 31-37-18-6 requires the juvenile court to select the least restrictive placement in most situations. However, the statute contains language which reveals that, under certain circumstances, a more restrictive placement might be appropriate. The statute requires placement in the least restrictive setting only "[i]f consistent with the safety of the community and the best interest of the child." I.C. § 31-37-18-6. Thus, the statute recognizes that, in certain situations, the best interest of the child is better served by a more restrictive placement. *See Madaras v. State*, 425 N.E.2d 670, 672 (Ind. Ct. App. 1981) ("[W]hile the juvenile code creates a presumption in favor of disposing of juvenile matters using the least severe disposition available to the court which will serve the needs of the case, the code explicitly recognizes that in some instances commitment may be in the best interests of the child and society in general.") (citation omitted); *see also M.R. v. State*, 605

N.E.2d 204, 208 (Ind. Ct. App. 1992) (noting that while commitment to the Indiana Boys School "should be resorted to only if less severe dispositions are inadequate, there are times when such commitment is in the best interests of the juvenile and society in general").

[20] Here, the record reveals that A.H. was given several chances to reform his behavior before the juvenile court committed him to the DOC. When A.H. was initially adjudicated a delinquent, on October 8, 2015, he was placed on probation for one year and was required to complete community service and participate in a tutoring program. Following a violation of probation, that occurred on January 31, 2016, and consisted of spray-painting vulgar words and pictures on a parks department dugout, the court ordered A.H. on home detention for thirty days and required him to participate in intensive home-based services. Following a second violation of probation, which included fifteen school-related discipline referrals, staying out past curfew, and leaving home without permission, A.H.'s probation was extended for six months, to April 8, 2017. Thereafter, on February 21, 2017, A.H.'s dispositional decree was modified to allow for placement at a residential treatment facility, where A.H. behaved well. However, shortly after being discharged from the facility in June 2017, A.H., experienced behavioral issues at school. He had nine discipline referrals; he refused to attend school on several occasions; he stayed out past curfew; and he failed to provide accurate information during his mental health assessment. At some point, A.H. was expelled from school.

[21] At the factfinding hearing, held on November 27, 2017, A.H.'s probation officer testified as follows:

> Since [A.H. has] been on probation, he has basically received every other service that we can provide for him, as far as community based services, home detention for thirty days, he's been at residential treatment for four months, he's- we've tried to get people in the home to work with him, and tried to get him to understand the importance of his education and so on, but he's not complying with any of those.

(Tr. Vol. 2 at 92). She further testified that there were no other options available to A.H., short of placing him in the DOC, and that, due to his expulsion, there were no education opportunities available to him at that time.

[22] The juvenile court determined that A.H. should be committed to the DOC. Under these circumstances, we cannot say that the court's decision was an abuse of discretion or that it was not in A.H.'s best interests. *See, e.g., J.J. v. State*, 925 N.E.2d 796, 802 (Ind. Ct. App. 2010) (affirming commitment of juvenile to DOC where juvenile had been offered numerous means for rehabilitation but "has continued to reoffend and disrespect the rule of law and his fellow citizens"), *trans. denied*. The juvenile court did not abuse its discretion by ordering A.H. committed to the DOC.

[23] Affirmed.


Vaidik, C.J., and Barnes, Sr.J., concur.