## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 11 2019, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher Sturgeon
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| C.S.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | December 11, 2019<br><br>Court of Appeals Case No. 19A-JV-1294<br><br>Appeal from the Clark Circuit Court<br><br>The Honorable Vicki L. Carmichael, Judge<br><br>The Honorable Susan L. Orth, Special Judge<br><br>Trial Court Cause Nos. 10C04-1902-JD-28, 10C04-1903-JD-88 |

**Altice, Judge.**

## Case Summary

[1] Following a delinquency adjudication for possession of marijuana and battery with bodily injury to a public safety officer, the juvenile court placed C.S. in the Department of Correction Juvenile Division (the DOC). On appeal, C.S. contends that the juvenile court abused its discretion by placing him in the DOC.

[2] We affirm.

## Facts & Procedural History

[3] C.S. has been involved with the juvenile justice system for some time, with his first delinquency adjudication for acts committed on September 2, 2015, at the age of thirteen.[1] This adjudication was based on an incident at school when C.S. became "completely out of control" and began destroying property and battering school personnel. *Appendix* at 126. He continued to be belligerent and disrespectful to responding officers and was arrested. As the result of three true findings of battery resulting in bodily injury, C.S. was placed on probation.

[4] Thereafter, C.S. was adjudicated a delinquent in 2016 for habitual disobedience of a parent and placed on probation. In May 2017, he was adjudicated a delinquent for leaving home without permission and he was sent to Wernle Youth & Family Treatment Center (Wernle) for residential treatment. After

---

[1] C.S. had two prior arrests/referrals in 2012 and 2013 in which no formal delinquency petition was filed.

about eight months, C.S.'s "unwillingness to engage in treatment" and his "verbal and physical aggression" resulted in his removal from Wernle and transfer to the DOC. *Transcript* at 7. During his time in the DOC, on January 30, 2018, C.S. committed battery by bodily waste against a correction officer and was subsequently adjudicated delinquent for this act and placed on probation.

[5] In January 2019, C.S. was released from the DOC and continued on probation. He attended Clarksville High School where, on February 1, 2019, he was found by school administrators to be in possession of marijuana. This led to the first delinquency petition at issue in this case, filed under cause number 10C04-1902-JD-28 (JD-28), as well as an allegation that C.S. had violated probation. C.S. was placed in the juvenile home incarceration program (the HIP) pending adjudication in JD-28. The HIP permitted C.S. to live at home with strict conditions, which he violated on at least three occasions in March. The State filed a motion to revoke C.S.'s placement in the HIP on March 26, 2019.

[6] At a hearing on March 27, 2019, the juvenile court revoked C.S.'s placement in the HIP. Juvenile Detention Officer C. Richardson then attempted to take C.S. into custody, and C.S. responded with profanity and by punching Officer Richardson twice in the face. Officer Richardson took hold of C.S., and Juvenile Detention Officer Paul Lenfert stepped in to assist. C.S. continued to resist, and the momentum from the struggle caused him and the officers to fall onto the defense table and break it. The three fell to the ground as the struggle continued. Eventually, two deputies from the Clark County Sheriff's Office

arrived and restrained C.S.  Both Officer Richardson and Officer Lenfert suffered injuries during the incident.

[7]     On April 2, 2019, the State filed a delinquency petition under cause number 10C04-1903-JD-88 (JD-88) alleging, among other things, that C.S. had committed two acts of battery resulting in bodily injury to a public safety official.  C.S. remained in detention awaiting factfinding in JD-88 and JD-28.

[8]     C.S. had at least two documented behavioral issues while at the juvenile detention center.  On April 18, 2019, he placed sheets over his window and light in his room and refused to remove them despite repeated requests from the staff.  That evening, several staff members entered the room and C.S. became physically aggressive toward them, requiring him to be placed in restraints.  C.S. struggled with staff members, kicking one of them in the face, and made multiple threats.  The second incident report took place three days later, on April 21, when he refused to take his prescribed medications, stripped down to his boxers, and repeatedly covered the cameras in his room so that staff could not see inside.

[9]     At the end of April 2019, C.S. and his mother signed a plea agreement in which he admitted to the allegations in JD-88 and JD-28.  The pre-dispositional report (the Report) was filed with the juvenile court prior to the joint dispositional hearing on May 9, 2019.  Counsel for both parties reviewed the Report with the

court.[2]  Additionally, Rachel Clemons, C.S.'s juvenile probation officer, testified at the hearing and recommended placement in the DOC based on his prior juvenile history, including stays at Wernle and the DOC.  Clemons noted that C.S. had received a psychological assessment in the past and been given services at both LifeSpring and Family Arc.  She opined that all juvenile remedies had been exhausted with respect to C.S. and that the DOC was the best option, as Wernle had refused to accept him back into the program and C.S. required the security of the DOC.

[10]   C.S.'s mother briefly testified and recommended that C.S. be sent home with conditions that he go to counseling and stay on his medications.  C.S. agreed and testified that he did not do well in the DOC because he was not on the right medications.  C.S. indicated that if he attended counseling and stayed on his medications, he would not have any issues and could focus on school.

[11]   The juvenile court made the following observations at the conclusion of the dispositional hearing:

> I, too, would like to see you consistent on your medication.
> None of us in this room want another person in the [DOC]….
> But your commentary about the medication, in looking at your
> record, indicates to me that you are going to need a structure to
> take your medicine.  In other words, if we just sent you home,

---

[2] On appeal, C.S. asserts that the Report was so biased and incomplete "that it could not present a sufficient picture upon which the juvenile court could adequately decide the outcome of [C.S.'s] case." *Appellant's Brief* at 10.  We do not share C.S.'s concerns regarding the Report.  Moreover, we observe that C.S. did not raise any objection below to the Report or attempt to supplement it.

you would be on your own, I mean, certainly, your mother could assist, but there's not a structure for counseling. There's not a structure for medication. There's not a structure for, for lack of better words, I'll call "instruction," whether that is school, any type of learning process …. And it certainly appears, Sir, that in light of your history and your inability to control your medications and behavior in an unstructured environment, the Court is inclined, and does accept the recommendation on the [Report].

*Transcript* at 16. The court placed C.S. in the DOC and granted his counsel's request that the commitment be open-ended with a review hearing in ninety days. C.S. now appeals from his commitment to the DOC.

## Discussion & Decision

[12] A juvenile court is accorded extensive latitude and flexibility in dealing with juveniles. *J.T. v. State*, 111 N.E.3d 1019, 1026 (Ind. Ct. App. 2018), *trans. denied*. Thus, the choice of a specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court. *Id*. The court's discretion in this regard, however, is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least-harsh disposition. *Id*. We will reverse for an abuse of discretion when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before it. *Id*.

[13] "The goal of the juvenile process is rehabilitation rather than punishment." *Id*. Because of this, juvenile courts have a variety of placement options, none of which are considered sentences. *Id*. Ind. Code § 31-37-18-6 provides:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
>> (A) in the least restrictive (most family like) and most appropriate setting available; and
>>
>> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[14] In sum, the law requires that the disposition selected be the least restrictive disposition that is consistent with the safety of the community and the best interest of the child. *See id.*; *see also J.T.*, 111 N.E.3d at 1026. The DOC, though a highly restrictive placement, is appropriate under certain circumstances. *See J.T.*, 111 N.E.3d at 1026; *Madaras v. State*, 425 N.E.2d 670, 672 (Ind. Ct. App. 1981) ("[T]he code explicitly recognizes that in some instances commitment may be in the best interests of the child and society in general.").

[15] Here, the juvenile court did not abuse its discretion in committing C.S. to the DOC. Since at least the age of thirteen, C.S. has been continuously involved with the juvenile justice system and his involvement is primarily the result of

angry and violent behavior. In addition to destroying property of others, he has battered school officials, Wernle treatment staff, and public safety officers. C.S. has also refused to take prescribed medication as directed and has failed to take an active role in his rehabilitation. Since his first adjudication in 2015, C.S. has received psychological assessment and counseling, been on probation multiple times with a number of violations, received residential treatment at Wernle until he was discharged to the DOC due to his violent and aggressive behavior, and unsuccessfully participated in the HIP. None of these less-harsh alternatives have resulted in any lasting positive change in C.S.'s behavior, and Wernle is no longer an available option.

[16] It was well within the juvenile court's discretion to reject C.S.'s request that he be returned home, presumably on probation, to attend counseling and take his prescribed medications on his own. The record clearly establishes the impracticality of this option. The juvenile court concluded, based on C.S.'s history, that the DOC would offer the structure C.S. needed to stay on his medications and receive counseling and education. Under the circumstances, we cannot say that the disposition selected by the juvenile court was an abuse of discretion or that it was not the least restrictive available alternative that was consistent with the safety of the community and the best interests of the child. *See K.A. v. State*, 775 N.E.2d 382, 387-88 (Ind. Ct. App. 2002) (affirming placement in the DOC where juvenile had received several chances to reform her behavior and failed to respond to these less-harsh opportunities), *trans. denied*.

[17]    Judgment affirmed.

Brown, J. and Tavitas, J., concur.