## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 13 2020, 11:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

A. David Hutson
Hutson Legal
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney L. Abshire
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

M.P.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

February 13, 2020

Court of Appeals Case No.
19A-JV-1754

Appeal from the Clark Circuit Court

The Honorable Vicki Carmichael, Judge

Trial Court Cause No.
10C04-1709-JD-240

**May, Judge.**

[1] M.P. appeals the modification of his placement in the Indiana Department of Correction ("IDOC"). He argues the juvenile court abused its discretion by

failing to provide any written findings or conclusions that the more restrictive placement was justified by the interests of community safety or M.P.'s best interests. Although the juvenile court violated its statutory obligation to provide findings and conclusions, we affirm because the error was harmless under the facts and circumstances herein.[1]

## Facts and Procedural History

On October 4, 2017, the State alleged M.P. was a delinquent based on his commission of acts that would constitute Class A misdemeanor dangerous possession of a firearm[2] and, if committed by an adult, Class A misdemeanor carrying a handgun without a license.[3] On November 14, 2017, M.P. entered a plea agreement pursuant to which he would admit he was delinquent for committing an act that would be carrying a handgun without a license and the State would dismiss the dangerous possession of a firearm charge. The juvenile court adjudicated M.P. a delinquent, ordered a one-year commitment to the IDOC Youth Division, and suspended that commitment to probation.

On November 22, 2017, M.P. began probation. M.P. was ordered to obey the rules of probation and signed an agreement stating he understood that if he

---

[1] Nevertheless, we remind the trial court of its obligation to enter such findings in juvenile cases and expect this error will not recur.

[2] Ind. Code § 35-47-10-5(a).

[3] Ind. Code § 35-47-2-1(e).

violated "any conditions of probation [his] suspended commitment to the [IDOC] Youth Division could be executed and [he] could be committed to the [IDOC] Youth Division . . . ." (Appellant's App. Vol. II at 50.)  M.P.'s mother signed the same agreement.  She consented to Probation Officers visiting M.P.'s home and acknowledged that she could be held in contempt if she failed to make reasonable efforts to help M.P. complete the terms of his probation.  Of these rules, three are relevant to the case before us:

> 2. You shall report to the Probation Department as directed. Missed appointments are a violation of your probation.
> 3. You shall allow visits from Probation Officers at school and home.
>
> *****
>
> 6. You shall notify your Probation Officer of any change in school, employment, or telephone number within 24 hours of such change.

(*Id*. at 49.)

On December 27, 2017, M.P. missed his intake appointment.  On March 1, 2018, and March 15, 2018, M.P. missed his probation appointments.  Between July 10 and July 12, 2018, M.P.'s case manager reached out to M.P.'s mother multiple times via text and call, but M.P.'s mother did not respond.  On July 12, 2018, M.P.'s probation case manager visited M.P.'s home, but no one let him in.  That same day, M.P.'s mother texted the case manager to let him know that she had forgotten to update him with her new number.  On August 6, 2018,

the case manager petitioned for modification of disposition with the recommendation that a "long term residential placement would be in the best interest of the family and the safety of [M.P]." (*Id.* at 131.)

[5] On August 7, 2018, the trial court issued an arrest warrant for M.P. On August 21, 2018, the arrest warrant was served on M.P. On August 22, 2018, M.P. appeared in court. On September 14, 2018, the trial court found M.P. in violation of his probation and ordered him to complete a residential program at Gibault Children's Services. On May 8, 2019, the juvenile court held a regularly-scheduled review hearing, during which evidence was presented about M.P.'s failures to follow Gibault's rules, and the court sent M.P. back to Gibault on the condition that he abide by the rules of the residential program. While at Gibault, M.P. was involved in a physical altercation and his chart accumulated thirty-nine incident reports. As a result, Gibault declined to continue to house M.P., and on May 29, 2019, the juvenile court decided to hold M.P. at the Clark County Juvenile Detention Center until another placement could be identified.

[6] On May 31, 2019, the State filed a verified petition for modification of dispositional decree and asked that M.P. "be sentenced to the [IDOC] Youth Services Division." (Appellant's App. Vol. III at 33.) On June 5, 2019, the juvenile court ordered M.P. remain at the county's detention center while the State looked for other placement alternatives. On June 12, 2019, M.P. admitted violating the terms of probation, and the court ordered him to remain in detention until the next hearing. On July 1, 2019, the juvenile court followed

the recommendation of the Probation Department and placed M.P. at the Youth Services Division of the IDOC.

# Discussion and Decision

[7]     A juvenile court is accorded wide latitude and great flexibility in its dealings with juveniles. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). The disposition of a juvenile adjudicated a delinquent is a matter committed to the juvenile court's discretion, subject to the statutory considerations of the child's welfare, community safety, and the policy favoring the least harsh disposition. *J.S. v. State*, 110 N.E.3d 1173, 1175 (Ind. Ct. App. 2018), *trans. denied*. We review a trial court's disposition and modification thereof for an abuse of discretion, which occurs if the decision is clearly against the logic and effect of the facts and circumstances before it or the reasonable inferences that may be drawn therefrom. *Id*. In determining whether a court has abused its discretion, we neither reweigh evidence nor judge witness credibility. *Id*.

[8]     When issuing a delinquent's dispositional decree, the juvenile court shall issue "written findings and conclusions" concerning the child's care, treatment, rehabilitation, or placement; parental participation in the plan; efforts made to prevent the child's removal from the parent; family services offered; the court's reasons for its disposition; and whether the child is a dual status child under Indiana Code article 31-41. Ind. Code § 31-37-18-9(a)(1)-(6); *and see* Ind. Code § 31-37-22-3(b) (extending these requirements to modification of a dispositional decree). M.P.'s sole challenge to the juvenile court's modification order is that

the juvenile court did not issue written findings, conclusions, or any sort of order explaining its reasons for placing him at the IDOC. M.P. claims the court abused its discretion when it ordered a more restrictive placement without written findings supporting the IDOC being "in the juvenile's best interest or consistent with community safety." (Appellant's Br. at 12.)

[9] The juvenile court did not make specific findings as required by Indiana Code section 31-37-18-9. Ind. Code § 31-37-22-3(b). Though we agree the court erred, we hold the error was harmless. Harmless error is "'an error that does not affect the substantial rights of a party.'" *Rosales v. State*, 3 N.E.3d 1014, 1019 (Ind. Ct. App. 2014) (quoting *Lander v. State*, 762 N.E.2d 1208, 1213 (Ind. 2002)). No error in anything omitted by the trial court "is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." Ind. App. R. 66.

[10] In our case, the probation file highlights several times M.P., in his mother's care, violated terms of probation:

> Juvenile violated terms of probation by missing probation appointments:
> - December 27, 2017 missed intake appointment. Attempted to call and voicemail box was full, mailed letter with new appointment.
> - March 1, 2018 missed intake appointment-no call/no show. Called mother, T.H. to reschedule.
> - March 15, 2018 missed appointment-no call/no show. Called mother to reschedule.

Juvenile violated terms of probation by non-compliance with service provider:

- On 07/10/18 Case Manager, Lance Lofton reached out to [mother] via text to meet with her and M[.P.]. No response.
- On 07/11/18 CM Lofton reached out to [mother] via text with no response.
- CM Lofton would like to note that there were also multiple phone calls made to [mother] in attempts to set up an appointment, but service was disconnected.
- On 07/12/18 from 8:30 a.m. to 8:45 a.m. CM Lofton went by the house this morning to meet with [mother] and [M.P.] and no one answered the door. CM Lofton stood and knocked, someone opened the curtains twice to peek out, however, no one came to the door to answer. Later that morning at 9:21 [mother] texted from an unidentified new number that she retrieved [CM Lofton's] card from inside the door and forgot to update [CM Lofton] with her new number and that the previous number was not in use.

(Appellant's App. Vol. II at 93.) We cannot infer the trial court erred by declining to return M.P. to his mother when he did not comply with the terms of his probation while in his Mother's care.

[11] When the court placed M.P. in a long-term residential placement, M.P. was involved in a physical altercation and was the subject of thirty-nine incident reports. Said incidents put M.P. into custody while the probation officer looked into seven recommended residential placement facilities to place M.P. Each facility could not accept M.P. into its program because "they were concerned for his safety as well as the safety of the other [residents]." (Tr. Vol. II at 34.)

Consequently, the court had no other choice than to place M.P. in the IDOC. We simply cannot ignore the multiple times M.P. violated the terms of his previous placements and reverse the juvenile court's dispositional order for its omission of findings when the record reveals the court was correct to conclude that placement in IDOC was in M.P.'s best interests. *See Madaras v. State*, 425 N.E.2d 670, 672 (Ind. Ct. App. 1981) (concluding that while "the court's failure to make findings was clearly error," reversal and remand to require court to detail its reasons for disposition would "serve no purpose" in light of conclusion that trial court's disposition was indeed proper "and Madaras has already served her sentence").

# Conclusion

[12] We admonish the court to include the compulsory written findings and conclusions when issuing a delinquent's dispositional decree. Nonetheless, the juvenile court's omission, in light of the specific facts of this case, is not reversible error. The court's modification of M.P.'s dispositional order is affirmed.

[13] Affirmed.

Crone, J., and Pyle, J., concur.